The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Cramer. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. At the time of Plaintiff's injury giving rise to this claim, January 12, 1994, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At the time, the employment relationship existed between Plaintiff and Defendant-employer.
3. Defendant-employer was insured and Casualty Reciprocal Exchange was the compensation carrier on the risk.
4. The claim was originally accepted by Defendants and a Form 21 was approved by the Commission on March 1, 1994. Based upon the Form 21, which set forth an average weekly wage of $184.00 per week yielding a compensation rate of $122.68 per week, temporary total disability benefits were paid between January 13, 1994 and April 7, 1994. Thereafter, a Form 24 was approved by the Industrial Commission on June 3, 1994 based on the employee's refusal to accept a light-duty offer of employment.
 ***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff is a female who was 39 years of age at the time of the hearing. She worked as a security guard for Defendant-employer. Plaintiff also worked for about 10 years as a school bus driver for the Sampson County Board of Education.
2. During her employment as a school bus driver, on July 23, 1993, Plaintiff sustained an accident, injuring her right knee. Plaintiff was treated for her injury by Dr. Joseph Thomas of Sampson County Orthopedics, who also treated the injury which is the subject of this claim. Plaintiff's knee injury from July 23, 1993 was the subject of a Form 26 agreement in IC File No. 362716, which was approved by the Commission on March 15, 1994. Under that agreement, Plaintiff received compensation for a fifteen percent permanent impairment to her right leg.
3. During her employment with Defendant-employer, Plaintiff worked as a security guard for Carroll Foods. Periodically she would walk the grounds of the facility, punching key stations.
4. On January 12, 1994, while making her rounds, Plaintiff slipped in mud striking her right knee on a wooden fence. Plaintiff was seen the next day by Dr. Thomas, who diagnosed the condition as an apparent crack in her kneecap. Dr. Thomas treated Plaintiff and advised her to remain out of work initially until around February 4, 1994.
5. On February 14, 1994, Dr. Thomas performed arthroscopy on the Plaintiff's right knee. He did a debridement of the fibrosis tissue and partial medial and lateral meniscectomy.
6. Following the Plaintiff's surgery, Dr. Thomas released her to return to light-duty work on April 5, 1994. On April 6, 1994, Plaintiff called Dr. Thomas' office stating that the employer did not have any light duty available even though she wanted it. In response to the Plaintiff's inaccurate statement, Dr. Thomas wrote her a note to be out of work until April 20, 1994.
7. Thereafter, Dr. Thomas referred Plaintiff to physical therapy where she complained of severe pain and at times refused to cooperate with treatment and reported no improvement. Plaintiff was observed ambulating normally in the hallway prior to entering the physical therapy department only to enter the physical therapy department with a noticeable limp.
8. During the same period of time, Mark Perkins, president of Industrial Loss Prevention, received Dr. Thomas' note that Plaintiff could return to work on April 5, 1994 and thereafter provided to her a light-duty position at Conway Trucking Express in Hope Mills. The trucking company was concerned about potential violence due to a truckers' strike and wanted visible security outside their facility. In this position, Plaintiff could sit in her car outside of the fenced-in facility, getting out and walking a short distance to check the fence twice during her shift.
9. Plaintiff presented for work at the trucking company in Hope Mills at 9:00 p.m. on April 8, 1994, but only worked one and one-half hours before requesting to be relieved, which Mr. Perkins arranged. Thereafter, Plaintiff continued to treat with Dr. Thomas, who could find no objective basis for her subjective complaints of pain. He did not take her out of work.
10. After April 8, 1994, when Mark Perkins relieved Plaintiff from her light-duty position at Carroll Foods, Inc., he repeatedly attempted to contact Plaintiff, but was unable to reach her. Mr. Perkins had other positions that were within the Plaintiff's physical restrictions such as one client who simply needed a security guard to view a set of monitors. After April 8, 1994, he was not able to find Plaintiff to tell her that the job was a permanent position and available to her.
11. Plaintiff's testimony that she was unable to continue the light duty assignment at the trucking company on April 8, 1994 is not supported by the greater weight of the credible evidence. Plaintiff had been released for light duty and the position offered met that requirement. The position did not require Plaintiff to be standing or walking for any great length of time. Plaintiff would have been seated for most of her security shift. Plaintiff's refusal to perform the light duty made available to her which was within her restrictions, was not justified.
12. Plaintiff's knee condition has also been evaluated by two other physicians, both orthopaedic specialists. Dr. Robert Elkins saw Plaintiff on September 12, 1994 and Dr. Donald Getz saw her on September 28, 1994. While Dr. Elkins recommended additional x-rays and an MRI, Dr. Getz did not believe an additional MRI would be helpful. Dr. Getz could make no objective findings consistent with Plaintiff's subjective complaints. Dr. Getz' only suggestion was that Plaintiff be referred for additional physical therapy and if that was not helpful, that she be released at maximum medical improvement and be rated.
13. Plaintiff's continued complaints of subjective symptoms after April 8, 1994 are not supported by objective findings by the evaluating physicians. No physicians took her out of work after April 20, 1994, and the evidence fails to establish that Plaintiff was incapable of earning wages due to her injury after April 8, 1994.
14. The Plaintiff continued to treat with Dr. Thomas. On February 15, 1995, Dr. Thomas noted that "she walked out without a limp but walked in with quite a limp." On April 26, 1995, Dr. Thomas noted "she is walking without a limp". It was Dr. Thomas' opinion at that time that her disability had not really changed and remained at the fifteen percent permanent impairment rating to the leg previously assessed in another claim.
15. Since July 1, 1994, Plaintiff has continued to work as a school bus driver for the Sampson County Board of Education.
 ***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's refusal to participate in the light duty offered her by the Defendant-employer was not justified and Plaintiff is not entitled to benefits during the continuation of such refusal. N.C.G.S. § 97-32.
2. Plaintiff has otherwise failed to prove that she is entitled to any additional compensation and/or medical benefits arising out of her January 13, 1994 injury. N.C.G.S. §§ 97-2,97-29.
3. Plaintiff is not entitled to any additional permanent partial disability benefits over and above the fifteen percent permanent partial disability rating she received for her 1993 unrelated Workers' Compensation injury based on Dr. Thomas' note that the rating has not changed. N.C.G.S. § 97-31(15).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Under the law, Plaintiff's claim for additional benefits must be, and the same is hereby DENIED.
2. Defendants shall pay the costs.
This the _____ day of June.
 S/ _____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ________________ THOMAS J. BOLCH COMMISSIONER
S/ ________________ CHRISTOPHER SCOTT COMMISSIONER
DCS/bjp